# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 04-3094

DORIS M. INEICHEN,

*Plaintiff-Appellant,*

*v.*

AMERITECH,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 4069—**Michael M. Mihm**, *Judge.*

———————

ARGUED FEBRUARY 10, 2005—DECIDED JUNE 10, 2005

———————

Before MANION, EVANS, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* After Ameritech fired Doris Ineichen, she sued Ameritech alleging race, sex, and disability discrimination, as well as violations of the Family and Medical Leave Act. The district court granted Ameritech summary judgment. Ineichen appeals. We affirm.

I.

In May 1994, Doris Ineichen, who is white, began working for Ameritech at its Rock Island County, Illinois facility. She

worked as a service representative and then later as a coach, training other service representatives.

At some point during her employment with Ameritech, Ineichen began dating another Ameritech employee, Ray Jones, who is black. As a result of this relationship, between June and September 2001, her supervisors had several cautionary conversations with her and Jones. Scott Shaw, who supervised Ineichen, and Mary Williams, Shaw's supervisor, counseled Ineichen to keep her personal and business life separate and not to spend an inordinate amount of time with Jones in the office while they were supposed to be working.

In late August 2001, another Ameritech employee told Williams and Shaw that a Credit Application System ("CAS") check had been run on Ray Jones on August 15, 2001. CAS checks a potential customer's credit history, including the person's billing history with Ameritech. The Ameritech computer system tracks which employee's computer password is used to access the CAS application, and Williams and Shaw learned that the CAS check on Jones was created on August 15, 2001, with "D. Ineichen's" account and password.

Concerned that Ineichen had improperly accessed Jones's private information, Shaw interviewed Jones and asked him whether he had given anyone permission to run a CAS check on him in August 2001. Jones said that he had not. Williams and Shaw then met with Ineichen and a union representative. During this meeting, Williams and Shaw informed Ineichen that she was being suspended pending dismissal for violating the Ameritech Code of Business Conduct, which provides that: "No employee will access, use or disclose customer records or reports, customer proprietary information or any other proprietary information without a valid business reason." The Code also provides

that "[e]mployees shall not gain access to their own records or those of family and friends without a valid business reason and prior approval from their supervisor." The meeting ended when Ineichen had an anxiety attack and was taken away by paramedics. Williams later telephoned Ineichen while she was in the hospital to confirm that Ineichen understood the result of the meeting, namely that she was suspended pending dismissal.

On September 6, 2001, Ameritech held a Dismissal Panel with union representatives to decide Ineichen's fate. During the Dismissal Panel, Ineichen stated that she did not remember whether she had run a CAS check on Jones, but claims she would have no reason to do so, so it wouldn't make sense for her to have run a check. Ineichen, however, admitted that she did not have permission to run a CAS check on Jones. Following the Dismissal Panel, Williams and Shaw terminated Ineichen for unauthorized access of Jones's CAS history.

Following her termination, Ineichen sued Ameritech, alleging that Ameritech fired her because of her race (white), because she was dating a black man (Jones), and because of her sex (female), all in violation of Title VII. 42 U.S.C. §§ 2000e *et seq.* Ineichen also alleged a claim of disability discrimination and a violation of the Family and Medical Leave Act. 29 U.S.C. §§ 2601 *et seq.* The district court granted Ameritech summary judgment on all of Ineichen's claims. Ineichen appeals, although on appeal she only challenges the district court's rulings on her race and sex discrimination claims.

## II.

On appeal, Ineichen claims that Ameritech committed race discrimination in two ways: first, by firing her because

she was white, and, second, by firing her because she was dating a black man. Ineichen also claims that Ameritech fired her because she was a woman. We consider each claim separately below.

Ineichen first claims that Ameritech fired her because she was white, in violation of Title VII. To avoid summary judgment on this claim, Ineichen relies on the indirect *McDonnell Douglas* method of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* method, to establish a claim of race discrimination, a plaintiff must establish that she is a member of a protected class; was meeting her employer's legitimate performance expectations; suffered an adverse employment action; and was treated less favorably than similarly situated individuals who are not white. *See Williams v. Waste Mgmt. of Illinois, Inc.*, 361 F.3d 1021, 1034 (7th Cir. 2004).

However, because Ineichen is white, the district court concluded that to establish a prima facie case of reverse discrimination, she must show more. Specifically, relying on this court's decisions in *Mills v. Health Care Service Corp.*, 171 F.3d 450, 455-57 (7th Cir. 1999), and *Phelan v. City of Chicago*, 347 F.3d 679, 684-85 (7th Cir. 2003), the district court concluded that a white plaintiff must show "background circumstances" sufficient to demonstrate that the particular employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishy' about the facts at hand." *Phelan*, 347 F.3d at 684. Applying this standard, the district court concluded that Ineichen failed to present evidence sufficient to satisfy the heightened standard applicable to reverse discrimination

cases, and, accordingly, granted Ameritech summary judgment.[1]

On appeal, Ineichen claims she presented sufficient evidence that there was something "fishy" about the facts at hand because she showed that several black employees "were not terminated for engaging in more egregious behavior." It is questionable whether this is enough to satisfy the heightened standard. It certainly does not fit the typical scenarios with which we recently illustrated the application of the heightened standard in *Preston v. Wisconsin Health Fund*, 397 F.3d 539 (7th Cir. 2005). That case involved a reverse sex discrimination case, where the male plaintiff alleged his male boss discriminated against men in favor of women. In affirming the district court's grant of summary judgment to the employer, we explained the rationale for the heightened standard in *Phelan* and *Mills*: "It is not surprising when women discriminate in favor of women any more than it is surprising when men discriminate in favor of men. [But] [i]t is surprising, in many though not all cases, when men discriminate against men in favor of women." *Id.* at 542. However, we noted that such reverse discrimination

_____

[1] Because Ineichen is white, the parties both characterize Ineichen's claim as one of reverse discrimination. The typical reverse discrimination case involves the hiring of a minority candidate over a white candidate, but here Ineichen was replaced by a white woman. Alternatively, reverse discrimination claims arise where the decisionmakers are of the same sex or race as the alleged victim, *see, e.g., Preston v. Wis. Health Fund*, 397 F.3d 539 (7th Cir. 2005), yet here the parties do not identify the race of the decisionmakers, namely Shaw and Williams. However, because Ineichen does not challenge the applicability of the heightened standard for reverse discrimination cases, we assume that is because both Shaw and Williams are white. Instead she argues that she has satisfied the heightened standard.

is not surprising under two circumstances: First, "where the men running the company are under pressure from affirmative action plans, customers, public opinion, the EEOC, a judicial decree, or corporate superiors imbued with belief in 'diversity' to increase the proportion of women in the company's workforce." *Id.* Second, "where the jobs in question are traditional 'women's work,' such as nursing, which the men running the company believe women can do better than men . . . ." *Id.*

Although *Preston* involved reverse sex discrimination (male discriminating against male), the same rationale applies equally in other reverse discrimination cases (female discriminating against female, white against white, black against black). Thus, Ineichen must present some evidence to show that it is not surprising that her supervisors would discriminate against her because she was white. The evidence she relies on, that several blacks were disciplined less severely, does not fit the mold of *Preston*. *Preston* also made clear, however, that the examples provided are not exclusive and that "the list is not a closed one." We need not decide, however, whether to add Ineichen's situation to the "fishy" list because even assuming she satisfied the heightened standard, she has nonetheless failed to establish the fourth prong of the *McDonnell Douglas* prima facie case. Specifically, Ineichen has failed to present evidence that she was treated less favorably than similarly situated individuals who are not white.

In attempting to satisfy this element of the prima facie case, Ineichen pointed to four non-whites who violated Ameritech's Code of Conduct, but who were not fired. The district court found that two of these individuals were not similarly situated, and Ineichen does not challenge that ruling on appeal. The two people she points to on appeal, Tramere Millbrook and Brian Tousseau, both of whom are

black, violated Ameritech's Code of Conduct by engaging in "cramming." Cramming involves charging a customer for products or services the customer did not order. Although Millbrook and Tousseau were disciplined, they were not fired, and that, Ineichen argues, shows that non-whites were treated more favorably.

However, to satisfy the "similarly situated" prong of the prima facie case, an employee must be "directly comparable in all material respects." *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004) (internal quotation omitted). This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no "differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

In this case, Ineichen is not similarly situated to either Millbrook or Tousseau, because the latter two engaged in different conduct.[2] Because Ineichen failed to present suffi-cient evidence that a similarly situated non-white employee

---

[2] Ameritech also points to evidence in the record that another Ameritech employee, Dean Lowery, was fired because he, like Ineichen, ran an unauthorized CAS check on a coworker whom he was (or had been—it is unclear which) dating. This, Ameritech argues, demonstrates that it treated those with similar violations similarly. Ameritech, however, does not identify Lowery's race and the portions of the record cited by the parties do not reveal whether he is black or white, so while this shows that Ameritech fired two individuals for the same violation, it does not aid us in determining whether race had something to do with the termination.

was treated more favorably, she has failed to establish a prima facie case of discrimination.

Moreover, even if Ineichen presented sufficient evidence to establish a prima facie case of race discrimination, that merely means that "the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the action." *See Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). In this case, Ameritech presented evidence of such a non-discriminatory reason for her firing, namely that it fired her based on evidence that she violated Ameritech's Code of Business Conduct by running a CAS check on Jones without permission or proper authorization from her supervisor. At this point, then, to avoid summary judgment, Ineichen must present evidence that the reason proffered by Ameritech is pretextual. *Id.* Although on appeal Ineichen claims that it would not have made sense for her to run a CAS check on Jones, that Jones would have consented to the search if asked, and that Ameritech should have further investigated the charge before firing her, it is not "the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000). Ineichen has failed to present any evidence that Ameritech's proffered reason was a lie. Accordingly, Ameritech was entitled to summary judgment on Ineichen's claim that Ameritech fired her because she is white.

Ineichen also claims that Ameritech committed illegal race discrimination by firing her for dating a black coworker. This court has not yet definitely ruled on whether discriminating against a person because they are involved in an interracial relationship constitutes race discrimination in violation of Title VII, although the Fifth, Sixth, and Eleventh

Circuits have held that it does.[3] *See Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks, Inc.*, 173 F.3d 988, 994 (6th Cir. 1999) (holding that a white employee may sue for race discrimination under Title VII where he alleges he was fired for having a biracial child); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 588-89 (5th Cir. 1998), *reinstated in relevant part on reh'g en banc, Williams v. Wal-Mart Stores, Inc.*, 182 F.3d 333 (5th Cir.1999) (per curiam) (holding "Title VII prohibits discrimination in employment premised on an interracial relationship"); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 891-92 (11th Cir. 1986) (holding that "[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race," and thus states a claim under Title VII).

On appeal, Ameritech states that it is "willing to assume for purposes of this appeal that this Court would reach the same conclusion." Nonetheless, Ameritech maintains it is entitled to summary judgment because Ineichen failed to

---

[3] In *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188 (7th Cir. 1992), the plaintiffs, a black man and a white woman who were married, sued alleging race discrimination, including claims that the defendant discriminated against them based on their interracial marriage. On appeal, this court did not specifically address whether such claims are actionable under Title VII. Likewise, in *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878 (7th Cir. 1998), the plaintiffs, who were white, presented a claim under Title VII, alleging discrimination based on their friendship with black co-workers. This court did not definitely resolve the propriety of such claims because the plaintiffs had conceded that an employee can bring an associational race discrimination claim under Title VII. *Id.* at 884.

present sufficient evidence to establish that Ameritech terminated her because of her relationship with a black man.

Because Ameritech assumes that firing someone for dating a person of a different race would violate Title VII, in the context of this case, we assume so as well but without deciding the question of law. We thus consider whether Ineichen has presented sufficient evidence of such discrimination to avoid summary judgment. Under the direct method, which is the only method of proof Ineichen relies upon to establish this discrimination claim, "[t]here are two types of permissible evidence . . . direct evidence and circumstantial evidence. The former essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus. The latter is evidence that allows a jury to infer intentional discrimination by the decision-maker." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004) (internal citation omitted).

To support her claim of discrimination under the direct method, Ineichen points to remarks attributed to Shaw by Pamela Moulton, a former manager at the Rock Island facility. Moulton testified that Shaw told her the relationship between Ineichen and Jones was "causing problems in the office specifically, and that it didn't seem like maybe [Ineichen] was doing her job, I guess, as suited [sic] because of seeing Ray" and that "people . . . didn't like" the relationship. Moulton further testified that Shaw "knew he had to do something about it meaning letting her go, not having her in that position."

This testimony, however, does not indicate that Shaw had a problem with Ineichen's relationship with Jones because she was white and he was black. It simply points to the fact that the relationship with a coworker was interfering with her ability to perform her job. In fact, when asked if Shaw or Williams ever commented on the fact that Jones was black

and Ineichen was white, Moulton replied: "No. It was more just them seeing each other." And when asked: "Did you ever hear anybody else at work say anything about the difference in [Ineichen] and Ray's races?" she said "No."

In response, Ineichen points to an affidavit from Moulton made after her deposition, in which she stated that: "In my deposition, I was asked if Scott Shaw said anything specific about problems the interracial relationship between Murlene Ineichen and Ray Jones was causing in the office and I answered that Mr. Shaw said they didn't like it, so they knew he had to do something about it, meaning letting her go." This is a misrepresentation of the deposition testimony. In her deposition, Moulton was asked: "Did Mr. Shaw say anything specific about what problems this relationship was causing in the office?" It was to that question that Moulton responded: "They just didn't like it. They didn't like it, so he knew he had to do something about it, meaning letting her go, not having her in that position." Contrary to Moulton's portrayal, this exchange in no way addressed the issue of race. Moreover, in the remainder of her deposition, when Moulton was asked specifically about the relationship, she stated unequivocally that Shaw and Williams never said anything about the fact that Jones was black and Ineichen white. She further stated that she had never heard anyone at work say anything about the differences in Ineichen and Jones's races. Rather, in her deposition, when asked about who did not like Ineichen's relationship with Jones, Moulton responded: "the older representatives, you know, that had been there quite some time because they were so sick of hearing about so and so sleeping with who or this and that."

Although at the summary judgment stage we must interpret the evidence in the light most favorable to Ineichen, *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th

Cir. 1989), that does not allow her to contradict deposition testimony with later-filed contradictory affidavits. As we explained in *Bank of Illinois*, "[w]e have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions. . . . If such contradictions were permitted . . . 'the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.' " *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). Because Moulton unequivocally testified in her deposition that Williams and Shaw never commented on the fact that Jones was black and Ineichen white, we reject Ineichen's attempt to create an issue to avoid summary judgment with a newly filed affidavit which contradicts her earlier testimony.

Ineichen also points to a comment Williams allegedly made to the effect that given the culture we live in, and Rock Island being in the Midwest, she and Jones had to be careful. Ineichen argues the reference to "culture" was a code for a disapproval of the interracial nature of their relationship. However, in her deposition, in discussing this reference to "culture" Ineichen testified that Williams never explicitly mentioned their race, but instead commented on their age difference—Ineichen was substantially younger than Jones. Thus, this comment fails to establish a racial animus. Ineichen also testified that Shaw talked about other people in the office having a problem with the interracial aspect of her relationship with Jones. At most, this shows that some coworkers disapproved of the relationship. Neither statement, however, shows that the decisionmakers harbored an animus against Ineichen because she was white and Jones was black. Moreover, neither of these comments

demonstrates a connection between Ineichen's firing and her interracial relationship with Jones. Therefore, Ineichen has failed to present sufficient direct evidence to avoid summary judgment on her claim that Ameritech discriminated against her based on her interracial relationship.

Ineichen also argues that the district court erred in granting Ameritech summary judgment on her sex discrimination claim. To establish sex discrimination, Ineichen relies once more on the indirect method of proof, pointing to the same two individuals, Millbrook and Tousseau, referenced above in the context of her race discrimination case. However, as noted above Millbrook and Tousseau were not similarly situated to Ineichen, and Ineichen therefore cannot establish a prima facie case of sex discrimination. Moreover, even if they were similarly situated, as discussed above, Ineichen failed to present evidence of pretext. *See supra* at 8. Accordingly, Ameritech was entitled to summary judgment on Ineichen's sex discrimination claim as well.

### III.

Ineichen failed to present evidence that a similarly situated non-white or a male employee was treated more favorably or that Ameritech's proffered reason for her discharge was pretexual. Therefore, her claims of race and sex discrimination fail under the *McDonnell Douglas* indirect method. Ineichen also failed to present sufficient evidence under the direct method that Ameritech fired her because she was dating a black man. Accordingly, the district court properly granted Ameritech summary judgment. We AFFIRM.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*