In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-3410

DAVID BALLANCE,

*Plaintiff-Appellant,*

*v.*

CITY OF SPRINGFIELD, ILLINOIS POLICE DEPARTMENT,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-C-3296—**Jeanne E. Scott**, *Judge.*

ARGUED JUNE 6, 2005—DECIDED SEPTEMBER 19, 2005

Before ROVNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* David Ballance, a former police officer, sued the Springfield Police Department for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for matters arising from his termination. The issue before us is whether the district court erred by finding that no genuine issue of material fact existed for trial on Ballance's reverse race discrimination claim. We find that although Ballance has established his prima facie case, he has failed to satisfy his burden of showing that the police department's legitimate, non-discriminatory reasons for terminating him were pretextual, and therefore, affirm.

## I.  BACKGROUND

We give a brief outline of the facts here, and will discuss them in greater detail where relevant to our analysis. Ballance, a white male, was a police officer with the Springfield, Illinois Police Department from October 1989 until his termination on October 17, 2000 by then-police Chief John Harris. Chief Harris stated that he terminated Ballance for three reasons: first, Ballance's involvement in a July 27, 2000 event where he allegedly battered his wife; second, Chief Harris's finding that Ballance had obstructed the internal affairs interview regarding this domestic battery; and third, Ballance's prior record of disciplinary actions.[1] Ballance ultimately brought a reverse race discrimination suit against the department in the United States District Court for the Central District of Illinois. Specifically, Ballance claims that the department discriminated against him based on his race because Chief Harris would not have fired an African-American officer for the same reasons that he terminated Ballance.

The district court granted summary judgment in favor of the police department, and Ballance timely appeals.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of summary judgment. *Lamers Dairy Inc. v. United States Dep't of Agric.*, 379 F.3d 466, 472 (7th Cir. 2004); *Ind. Family &*

---

[1]  Ballance and his wife, Christine Ramsey ("Chris"), both dispute that the domestic battery occurred. Ramsey initially reported the alleged abuse, and then retracted her statement, stating that her injuries were self-inflicted. Ramsey suffered the following injuries: bleeding, scrapes on her elbows, bruising and swelling on her body, two broken ribs, and blood in her urine.

*Soc. Servs. Admin. v. Thompson*, 286 F.3d 476, 479 (7th Cir. 2002). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When determining whether a genuine issue of material fact exists, we consider evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## B. Ballance's Reverse Race Discrimination Claim

Title VII prohibits employers from discriminating against employees on the basis of sex or gender. 42 U.S.C. § 2000e-2(a)(1) (2005). Plaintiffs in employment discrimination cases can avert summary judgment by presenting either direct or indirect evidence showing discriminatory intent by the defendant or its agents. *O'Regan v. Arbitration Forms, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). Given that Ballance does not provide any direct evidence of discrimination on the basis of race, he must proceed under the familiar four-part burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* scheme, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802; *O'Regan*, 246 F.3d at 983.

Under *McDonnell Douglas*, a plaintiff attempting to establish a claim of race discrimination must establish four prongs: first, that he is a member of a protected class; second, that he was meeting his employer's legitimate performance expectations; third, that he suffered an adverse employment action; and fourth, that he was treated less favorably than similarly situated individuals who are not members of his protected class. *See Ineichen v. Ameritech*, 410 F.3d 956, 959 (7th Cir. 2005). It is well settled law that the protections of Title VII are not limited to members of historically discriminated-against groups. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976); *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 863 (7th Cir. 1997). When analyzing reverse dis-crimination plaintiffs, we have held that in order to estab-lish a prima facie case, in addition to meeting the second, third and fourth prongs above, such a plaintiff must show that "background circumstances" exist to show an inference that the employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishy' about the facts at hand." *Phelan v. City of Chicago*, 347 F.3d 679, 684-85 (7th Cir. 2003); *see also Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455-57 (7th Cir. 1999).

Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802; *Ineichen*, 410 F.3d at 961. If the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the defendant's explanation was pretextual. *Id.* at 961. Pretext requires more than showing that the decision was "mistaken, ill considered or foolish, [and] so long as [the employer] honestly believes those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Pretext "means a dishonest explanation, a lie rather

than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000).

The police department argues that the district court erred by finding that Ballance established his prima facie case. We disagree. In this case, the district court was correct to find that background circumstances existed to show an inference that the police department may discriminate against whites. The district court noted that the City of Springfield commissioned Husch & Eppenberger, LLC, a law firm, to investigate charges of racism in the police department. Husch & Eppenberger produced a report which stated in part:

> Many expressed resentment that women and minorities appeared to get special treatment . . . Based upon several interviews, including Chief Harris', race and gender *are* taken into consideration at various stages, including hiring, work assignments, promotion, and determination of disciplinary action or determination of the need for an internal affairs investigation.

Husch & Eppenberger Report at 58-59 (emphasis in original). We agree with the district court's finding that this report supports the inference that the police department, through Chief Harris, gave preferences to minorities and women in the disciplinary process.

We also agree with the district court's analysis that Ballance was meeting his employer's expectations. Although Ballance's record shows that he was disciplined by the police department (as we will examine more in detail in our pretext analysis), he was also highly commended during his career. Ballance received the police department's Porter Williams Award for bravery, as a result of an incident on Thanksgiving Day 1995 when Ballance attempted to make a traffic stop. The driver ran from the car and pointed a gun at Ballance. Ballance shot and killed the driver in self-

defense. In 1999, Ballance found a baby that had been shot in the head. Ballance immediately called emergency medical personnel who took the baby to the hospital. The baby ultimately survived. An independent commission recommended that Ballance receive the police department's highest award, the Silver Suarez Award, for actions above and beyond the call of duty. Chief Harris rejected the recommendation of the commission but gave Ballance a letter of commendation for his actions. The police department argues that Ballance's disciplinary issues overshadow any issue of material fact that he was meeting the police department's legitimate performance expectations. We disagree. Although Ballance was disciplined (he received 31 days of disciplinary suspension time at different times in his career while employed with the police department), the award, letter of commendation, and nomination for the top award in the police department help create a genuine issue of fact concerning whether he was meeting his employer's legitimate expectations.

The parties also disagree as to whether Ballance can show that he was treated less favorably than African-Americans at the police department. Ballance argues that Chief Harris treated an African-American police officer, Larry Stelivan, more favorably than he. Stelivan was arrested for domestic battery after slapping his wife twice during a weekend drive. In his motion opposing the police department's motion for summary judgment, Ballance presented evidence that Stelivan lied during his internal affairs interview when he denied slapping his wife. Lying during an internal affairs interview is automatic grounds for dismissal for violation of Police Department Rule 27.[2] Yet Stelivan was

---

[2] Springfield Police Department Rule 27 provides:

    A.   Members will, upon the order of the Chief of Police or his designee, truthfully answer all questions specifically directed and narrowly related to the

(continued...)

never charged with a Rule 27 violation.

Ballance was confrontational during his internal affairs interview. However, according to Ballance, he answered all of the questions truthfully. Yet, the police department charged and terminated him for a Rule 27 violation. The police department argues that Ballance and Stelivan are not similarly situated, because although both Ballance and Stelivan were arrested for domestic battery, Ballance allegedly battered his wife more severely than Stelivan. The police department notes that Ramsey, Ballance's wife, suffered broken bones and bleeding, while Stelivan's wife did not. This argument is unconvincing. Within this particular set of facts, we find that domestic batterers are comparable to each other, regardless of the degree of the battery involved. The police department also argues that Ballance's disciplinary record is not comparable to Stelivan's. Again, the police department notes that Ballance received 31 days of disciplinary suspension time while employed with the police department, while Stelivan has received 12 days of suspension while employed with the police department, mostly, with the exception of three days' suspension for the domestic incident with his wife, for

---

[2] (...continued)

> scope of employment and operations of the Department which may be asked of them in the course of an internal investigation.

B.  Obstruction in any manner, or an attempt to obstruct an authorized internal investigation is a serious disciplinary offense justifying dismissal.

C.  Failure to truthfully answer questions or provide requested material will be cause for dismissal from employment. Such information gained is compelled and may not be used in any criminal prosecution of the member answering.

administrative violations. Yet, although Stelivan may have been suspended for fewer days than Ballance, we find that a jury could reasonably conclude that the police department treated Stelivan more favorably than Ballance with respect to the obligation and police department policy for officers to tell the truth during internal investigation interviews. As a result, we find that Ballance has established his prima facie case.

Faced with Ballance's prima facie case, the police department, through Chief Harris, presented three legitimate, non discriminatory reasons for its decision to fire Ballance. First, Chief Harris found that Ballance beat his wife. Second, Chief Harris determined that Ballance, through his behavior at the internal affairs interview, obstructed an internal affairs investigation and thus violated Police Department Rule 27. Third, Chief Harris terminated Ballance because of his prior record of disciplinary actions.

We agree with the district court's analysis that Ballance has been unable to prove that these reasons were pretext for discrimination. Although Ballance argues that Chief Harris ultimately concluded that Ballance did not beat his wife, and then changed his conclusion simply to have some legitimate reason to fire Ballance, the record simply does not support this view. Chief Harris testified that he believed Ballance hit his wife, broke her ribs, and bloodied her, as supported by the following: Christine Ramsey's sworn statement in her Order of Protection petition reciting the abuse she allegedly suffered during the July 27, 2000 event; Ramsey's internal affairs interview in which she clearly stated that Ballance beat her and caused bodily injury; the physical evidence of her injuries; and Heather Ballance's (Plaintiff's daughter) testimony that corroborated Ramsey's testimony. Heather Ballance testified that on the night Ballance allegedly beat his wife, she saw Ramsey on the ground outside of their garage, severely beaten and upset, as Ballance sped away.

In addition, Commander James Burton, the senior police officer who investigated this incident, stated in his report to Chief Harris, "In my mind, there is no doubt David Ballance struck Chris Ballance after placing her in a 'bear hug' causing these injuries." Also, Deputy Chief George Murphy reviewed Ballance's internal affairs investigative file, and recommended Ballance's termination. Ballance denied that he caused these injuries, but could not explain how his wife was so severely hurt. Based on this overwhelming evidence, it is hard for Ballance to argue that Chief Harris initially believed him.

Ballance speculates that Chief Harris believed his version of the facts because he did not charge him with violation of Police Department Rule 4, which is a Conformance to Law Charge.[3] According to Ballance, if Chief Harris truly believed that he had beaten his wife, he would have charged him with this police violation since he broke the law. However, Ballance fails to cite to any evidence in the record to support this assertion. Such self-supporting assertions, without factual support in the record, cannot be used to defeat a motion for summary judgment. *See Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146-47 (7th Cir. 1994). Moreover, the overwhelming evidence of Ramsey's injuries and Ballance's own explanation of the incident all lead us to the conclusion that Chief Harris's beliefs are not pretextual.

Ballance also argues that he did not obstruct the internal investigation of his alleged battery. Again, based on the record, we find that the district court did not err in concluding that Chief Harris honestly believed that Ballance

---

[3] Police Department Rule 4 states, in part, that "All members [of the police department] will obey the Constitution and laws of the United States and of the State of Illinois, ordinances of the City of Springfield, and law of any state and local jurisdiction in which they are present."

interfered with the internal affairs investigation. In Commander Burton's report to Chief Harris, he stated:

> During the Internal Investigation interview David Ballance on 9/15/2000, David Ballance is not cooperative with the investigator and has to be ordered to answer the questions. It must of [sic] become so tense, that Union President Don Kliment asked to a [sic] recess to calm Ballance down. Ballance would not answer the questions, but would ask a question each time . . . I strongly believe that David Ballance lied during this interview. I suggest that Ballance be subjected to a polygraph examination and again asked the questions concerning the injuries to Chris Ballance.

The transcript from Ballance's internal affairs interview also could lead one to believe that Ballance indeed was being obstructive, through the fact that he was argumentative, confrontational, and refused to answer questions.[4]

---

[4] One portion of the internal affairs interview is as follows:

| Internal Affairs: | You know the victim, Chris, indicates that you struck her three times with your fist, did you strike her? |
|---|---|
| Ballance: | I already answered that. |
| Internal Affairs: | I'm asking you again. |
| Ballance: | I answered that question. |
| Internal Affairs: | I'm giving you a direct order, answer the question. |
| Ballance: | What was the question again? |

Another portion of the interview is as follows:

(continued...)

Ballance uses the fact that he answered all of the questions during the internal affairs investigation to indicate that he fully cooperated during his internal affairs interview. However, the record does not reflect that the beliefs held by Chief Harris and Commander Burton, that Ballance obstructed the internal affairs investigation, were not honestly held by the command staff of the police department. *See Bell v. E.P.A.*, 232 F.3d 546, 550 (7th Cir. 2000) ("Plaintiffs cannot prevail at trial if the fact-finder finds that the [employer] honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless." (quoting *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 890 (7th Cir. 1997)).

---

[4] (...continued)

| | |
|---|---|
| Internal Affairs: | Do you have any reason or do you know why she would have [her injuries] notarized and put in open court? |
| Ballance: | Did she do it? |
| Internal Affairs: | Signed and notarized? |
| Ballance: | Did she do it? |
| Internal Affairs: | I'm asking the questions here, Dave. I'm not answering your questions. I'm answering . . . I'm asking you the question . . . |
| Ballance: | Well you're not answering mine! |
| Internal Affairs: | Dave, I'm only going to tell you one . . . |
| Don Kliment (Union Representative): | . . . I need a time out here . . . |

Finally, Ballance argues that his disciplinary record is comparable to Officer Stelivan's, and thus indicative of the police department's supposed pretext for discrimination. The record does not support this conclusion. Aside from the incident with his wife, in July 1994 Ballance served a ten-day disciplinary suspension for an alleged off-duty physical confrontation with a store owner of a local business in Springfield. In July 1995, he lost one day of vacation due to his involvement in an automobile accident that the police department found to be avoidable. In 1996, the police department charged Ballance with several rules violations: one involved a verbal confrontation and threatened physical violence against his neighbor; a second involved an alleged failure to report to work on four different days; and a third involved insubordination in which he allegedly responded to an emergency call when he was told by his commander not to do so. Ballance received three five-day suspensions for these violations, but was allowed to serve them concurrently. In 1997, Ballance served another five-day suspension for allegedly challenging a 65-year old man to a fistfight during a basketball game. Finally, in 1998, Ballance was fired for allegedly throwing a rock at a passing car while he was off-duty. This termination went to arbitration, and the arbitrator ordered that Ballance be reinstated because the evidence did not sufficiently establish that he threw the rock. Stelivan, on the other hand, served a three-day suspension for an avoidable vehicle accident, a one-day suspension for another avoidable vehicle accident, and a seven-day suspension for conducting personal business on duty. It would not be appropriate for us to express a view as to whether the sanction imposed against Ballance might be perceived by some individuals as more severe than the infraction justified. Our only job is to assess whether the justifications given by the police department for Ballance's termination are honest. *See Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). We do not sit as a super-personnel department with authority to review

an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation. *Id*. Based on the record as a whole, as well as Ballance's lengthy and egregious disciplinary record, we do not find any reason to believe that the police department's reason for terminating him, based solely or partly on his disciplinary record, is a lie.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment in favor of the defendant, the City of Springfield Police Department.

A true Copy:

       Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*