In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2676

LORILLARD TOBACCO CO., INC.,

*Plaintiff-Appellee,*

*v.*

A&E OIL, INC., THOMAS KURUVILLA, JOSE KURIAN, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 5833—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED JANUARY 18, 2007—DECIDED SEPTEMBER 21, 2007

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Lorillard Tobacco Company sued A&E Oil, Incorporated, its two shareholders, and one of its employees alleging that they violated Lorillard's trademark for Newport Cigarettes. The district court granted Lorillard's motion for summary judgment, awarding $50,000 in statutory damages. The district court subsequently determined that Lorillard was entitled to attorneys' fees and entered a permanent injunction. The defendants appeal only the decision determining Lorillard's entitlement to attorneys' fees. We affirm.

I.

Thomas Kuruvilla and Emmanuel Joseph each own half of A&E Oil ("A&E"), a corporation that runs a gas station and mini-mart in Chicago, Illinois. The corporation employs Jose Kurian, who is Kuruvilla's brother. Among other items, the station sells cigarettes by the pack. In particular, they sell Newport cigarettes, which are manufactured by Lorillard.

During a routine visit to the station, a Lorillard sales representative noticed five cartons of Newport cigarettes that she suspected were counterfeit. She purchased six packs from the suspected counterfeit cartons, which she then sent to Lorillard's laboratory for inspection. The inspection concluded that all six packs were counterfeit, based on discrepancies in the packaging, printing, and product codes from authentic Newport cigarette packs. All of the packs also bore fake tax stamps. Based on this evidence, Lorillard filed suit against A&E, Kuruvilla, Joseph, and Kurian under the Lanham Act, 15 U.S.C. § 1051 et seq., for trademark infringement and obtained a seizure order. The seizure order resulted in the confiscation of three opened packs of counterfeit Newport cigarettes found in the station's office, which bore the same indicia of counterfeiting.

The critical question remaining in this case is whether A&E knew about the counterfeit cigarettes found in the station; resolution of the attorneys' fees issue requires discerning whether the defendants knowingly sold counterfeit cigarettes. Kuruvilla claims that he bought Newport cigarettes for resale exclusively from a wholesaler called Midwest Cash and Carry. There was no evidence in the record that Midwest Cash and Carry ever distributed counterfeit cigarettes or that counterfeit cigarettes

were ever recovered there. Kuruvilla stated that the only other possible source for cigarettes to have entered the store inventory is through customer returns, which occurred at a rate of about one pack every two weeks. A&E, however, would not sell returned packs. Before the seizure, a customer returned a pack of Newport cigarettes, complaining about their quality. Kurian, who was working at the time, took another pack of Newport cigarettes from A&E stock, opened it, and tried one. He agreed with the customer that the cigarette tasted "terrible." Kurian left the returned pack and the opened pack from the stock in the office, and later told Kuruvilla about them. The returned pack and the opened pack from stock were among the three packs seized by Lorillard. (The origin of the third pack remains unexplained.)

The counterfeit cigarettes found at A&E were not an isolated occurrence. Beginning in the summer of 2003, Lorillard became aware of a rash of counterfeit cigarettes infiltrating the Chicago market. As a result, Lorillard sued over fifty sellers and distributors and investigated a common source.

Lorillard claims that the counterfeit cigarettes found at A&E came from a company called U.S.A. Cigarettes. A&E admitted purchasing items from U.S.A. Cigarettes, such as soda pop and cigars, through a contact person known to A&E only as "Mohammed," but A&E claims never to have purchased any cigarettes from U.S.A. Cigarettes. The evidence, however, shows that "Amin Arba" endorsed one of the checks Kuruvilla wrote to pay U.S.A. Cigarettes, and that "Amin Arba" is an alias for Amin Umar, who has been linked to the counterfeit cigarettes.

After initially obtaining a default judgment against the defendants, which the district court subsequently vacated, and after contentious discovery proceedings, Lorillard filed a motion for summary judgment. The district court granted the motion, concluding that "A&E knew it was selling counterfeit cigarettes," and awarded Lorillard $50,000 in statutory damages. In particular, the district court explained that "the individual Defendants ignored several warning signs, such as their association with Umar, that the Newports for sale at A&E might have been counterfeit. Coupled with Defendants' behavior at the discovery stage of the litigation, the court finds that there is sufficient evidence to establish that A&E, and the individual defendants had knowledge that they were selling counterfeit cigarettes." Lorillard then sought a permanent injunction and a declaration of its entitlement to attorneys' fees under the statute, which the district court also granted. Lorillard subsequently submitted a motion for attorneys' fees totaling $136,349.76, although the district court's docket indicates that the final amount of the award has not yet been determined.[1] The defendants

---

[1] We recognize that "[g]enerally, an award of attorneys' fees that does not fix the amount of the award or specify a formula that would allow for calculation of the award is not a final judgment within the meaning of [28 U.S.C.] § 1291." *Kokomo Tube Co. v. Dayton Equip. Servs. Co.*, 123 F.3d 616, 621 (7th Cir. 1997) (citations omitted). However, "[a]n exception to this rule lies in the case where the initial order awarding fees is reviewed in conjunction with an appeal from a final judgment on the merits." *Id.* (citation omitted). In this case, the award of attorneys' fees follows from mandatory statutory language that encompasses the merits of the case. Accordingly, we assume

(continued...)

do not appeal the summary judgment ruling that awarded statutory damages or the permanent injunction, but they do appeal the district court's decision that Lorillard is entitled to attorneys' fees.

II.

Ordinarily, a district court's decision to award attorneys' fees is reviewed for abuse of discretion. *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994) ("A decision to award attorneys' fees under the Lanham Act is firmly committed to the district court's discretion . . . ." (citation omitted)). The award of fees in this case, however, was not made in the discretion of the district court, but rather followed from statutory language requiring the award of attorneys' fees if the defendants knowingly used a counterfeit mark. 15 U.S.C. § 1117(b). Because the award of attorneys' fees follows from an application of statutory language, we review the district court's application of the statute de novo as a question of law. *See Sosebee v. Astrue*, No. 06-3326, [___ F.3d ___, ___] slip op. at 5 (7th Cir. July 17, 2007) (noting that although review of an award of attorneys' fees is normally reviewed for an abuse of discretion, "[i]f the district court reached its conclusion because of its interpretation of relevant law, [ ] then we review that question of law *de novo* because a district court's application of an erroneous view of the

---

[1]  (...continued)
jurisdiction "on the principle that a court of appeals may, in the interest of orderly judicial administration, review matters beyond that which supplies appellate jurisdiction." *Id*. at 621-22 (internal quotation and citation omitted).

law is by definition an abuse of discretion." (citation omitted)); *see also Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999) (noting that while assessing a district court's determination of attorneys' fees is normally reviewed for an abuse of discretion, "we review de novo the district court's legal analysis and interpretation of the Lanham Act." (citation omitted)). In effect, this standard requires us to consider whether the evidence, when viewed in the light most favorable to the defendants, demonstrates that A&E knowingly sold counterfeit cigarettes (a determination made by the district court in its summary judgment ruling), even though the defendants limited their appeal to the attorneys' fee award and did not appeal the summary judgment against them.

Relevant here, Lorillard sued the defendants based on 15 U.S.C. § 1114(1). This statute makes a person liable who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Lorillard alleged that the defendants sold counterfeit Newport cigarettes, thus violating the statute. The district court awarded attorneys' fees based on 15 U.S.C. § 1117(b), which states that:

> In assessing damages under subsection (a), *the court shall*, unless the court finds extenuating circumstances, *enter judgment* for three times such profits or damages, whichever is greater, together *with a reasonable attorney's fee*, in the case of any violation of section 32(1)(a) of this Act (15 U.S.C. 1114(1)(a)) or section 220506 of title 36, United States Code, that consists of *intention-*

*ally* using a mark or designation, *knowing* such mark or designation is a counterfeit mark (as defined in section 34(d) of this Act (15 U.S.C. 1116(d)), in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b) (emphasis added). To prove knowledge of the counterfeiting, Lorillard was not required to prove the defendants' actual knowledge; knowledge includes a willful blindness or a failure to investigate because one "was afraid of what the inquiry would yield." *Louis Vuitton v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989). If willful blindness occurs, an award of attorneys' fees is required by the statutory language absent extenuating circumstances. 15 U.S.C. § 1117(b) ("the court shall . . . enter judgment . . . with a reasonable attorney's fee."); *see also Hard Rock Café Licensing v. Concession Servs., Inc.*, 955 F.2d 1143, 1151 ("Willful blindness is sufficient to trigger the mandatory provisions of subsection b." (citing *Lee*, 875 F.2d at 590)).

In this appeal, we must determine whether the record demonstrates that the defendants acted with knowledge or willful blindness in selling counterfeit cigarettes. The district court made a finding of knowledge in the context of awarding damages to Lorillard. After thoroughly reviewing the record, we find that the evidence demonstrates that the defendants acted with knowledge or willful blindness. Notably, the defendants do not contest on appeal the counterfeit nature of the cigarettes recovered from the station. *See* Def.-App. Br. at 8 ("Lorillard seized nine counterfeit Newport cigarette[ ] [packs] from the A&E mini-mart. . . . Each of the nine packets apparently bore fake tax-stamps."). Furthermore, the tax stamps on the counterfeit cigarettes were noticeably fraudulent. *Cf. Lee*, 875 F.2d at 590 (finding willfulness when shop owner

failed to consider that "expensive brand-name goods [are] unlikely to display . . . poor workmanship, to be lined with purple vinyl, and to be sold by itinerant peddlers at bargain-basement prices."). Kuruvilla, who buys the cigarettes by the carton, affirmed that he placed the cigarettes on the shelf for sale by the pack. While stocking the cigarettes, he testified that he checks for the tax stamps and examines each pack "every time," explaining that "before I put them in the counter, I—when I open up a carton, I do" check. Yet somehow he "never noticed" any discrepancies in the counterfeit tax stamps, notwithstanding the obviousness of the counterfeit. Later, however, in an affidavit submitted in opposition to the summary judgment motion, Kuruvilla denies checking tax stamps "most of the time," thus contradicting his deposition testimony. A defendant, however, cannot create " 'sham' issues of fact with affidavits that contradict their prior depositions." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (internal quotation and citation omitted). Kuruvilla's attempt to create such a sham issue negates his feigned ignorance.

The record contains other contradictory evidence. For example, when Kuruvilla spoke with his brother, Kurian, about the seizure of the three packs of cigarettes, Kurian told Kuruvilla about the source of two of the packs. Specifically, one pack came from a customer returning a pack of bad-tasting cigarettes, and a second pack from Kurian testing a pack from the stock that likewise tasted "terrible." Kuruvilla, however, contradicted his brother and testified subsequently in a deposition that the cigarette packs belonged to Kurian personally. Kuruvilla attempted to retract his damaging deposition testimony by stating in the affidavit submitted in opposition to the

summary judgment motion that "[t]he three open packs of cigarettes . . . were stale cigarettes returned by customers." Again, this statement merely creates a sham issue of fact, since the defendants do not contest on appeal that the seized cigarettes were counterfeits, not just stale. *See id.*

Furthermore, the defendants fail to present any view of the evidence that plausibly explains the presence of counterfeit cigarettes at the station or that refutes Lorillard's proffered evidence of an illegitimate source. A&E and its owners and employee posit only two possible sources for the counterfeits entering the station's inventory: through their supplier Midwest Cash and Carry or through customer returns. A&E would not resell returned packs. Thus, customer returns cannot account for the six packs of counterfeit cigarettes obtained from the sales shelf. Furthermore, customer returns occurred at a rate of about one pack every two weeks, and with the high turnover of inventory (Kuruvilla purchased cigarettes weekly), customer returns cannot explain the six packs found in the sales inventory or the five cartons of suspected counterfeit cigarettes originally viewed by the Lorillard sales representative.

The other source defendants proffer is the wholesaler Midwest Cash and Carry. There is no evidence in the record, however, that Midwest Cash and Carry ever trafficked in counterfeit cigarettes. On appeal, the defendants suggest that counterfeit cartons could have been returned to Midwest Cash and Carry by another customer, and then, without Midwest Cash and Carry or the defendants knowing they were handling counterfeits, the counterfeits were resold to the defendants. Other than Kuruvilla's speculative deposition testimony, there is no evidence of counterfeit cigarettes at Midwest Cash and

Carry. *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1299 (7th Cir. 1992) ("[A] bare contention that an issue of fact exists is insufficient to raise a factual issue." (citation omitted)). More significantly, A&E never argued in its response to Lorillard's motion for summary judgment before the district court that the counterfeit cigarettes could have come from Midwest Cash and Carry. Accordingly, A&E has forfeited this argument. *See Assoc. Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) ("[C]ontentions, not presented in opposition to summary judgment, have been forfeited.").

There is simply no evidence in the record to support defendants' claims of an innocent source for the counterfeit cigarettes. Furthermore, the defendants fail to present any evidence to counter Lorillard's evidence that the counterfeit cigarettes came from U.S.A. Cigarettes, a supplier connected to counterfeit cigarettes. Although the defendants denied in depositions ever purchasing cigarettes from U.S.A. Cigarettes, they admit that they could have done so. In fact, they acknowledge that they did purchase other products from this company whose name makes it an obvious source for cigarettes. One check written by A&E to U.S.A. Cigarettes bears the endorsement of Amin Arba, an alias for Amin Umar, who as shown below is a known source for counterfeit cigarettes. Umar would drive a green van around to various gas stations selling counterfeit cigarettes (presumably along with other goods) and, it can be reasonably inferred, receiving checks made out to U.S.A. Cigarettes. Many other checks to U.S.A. Cigarettes from other retailers also bear Umar's endorsement. In other related investigations and lawsuits, Lorillard has linked Umar specifically to sales of

Newport counterfeit cigarettes.[2] Joseph, the co-owner of A&E, also does business with U.S.A. Cigarettes at his other gas stations and, although Joseph denies ever speaking to Umar, Umar's telephone records indicate that he placed a call to Joseph's telephone number once. Finally, A&E's conduct during discovery suggests that it knew about the counterfeit cigarettes. Notably, A&E did not produce the checks written to U.S.A. Cigarettes until July 2004, after A&E had inaccurately represented to the district court that Lorillard already possessed "all business records in Defendant's possession." The district court found that "the individual Defendants in this case were less than forthcoming with Lorillard at the discovery stage of the litigation . . . stalled . . . and only cooperated after they were held in default."

Standing alone, the obvious nature of the counterfeit tax stamps, coupled with the testimony that Kuruvilla regularly checked the stamps, would be sufficient to conclude that the defendants acted with willful blindness. *Lee.*, 875 F.2d at 590 (holding that knowledge under the Lanham Act includes a willful blindness or a failure to investigate because one "was afraid of what the inquiry would yield."). This case, however, provides additional

---

[2] Specifically, in other cases, Lorillard has found Umar's endorsement on checks to U.S.A. Cigarettes from retailers that carried counterfeit Newport cigarettes with indicia of counterfeiting identical to the indicia on the cigarettes in this case. Some of those checks were accompanied with invoices for cigarettes, including one for Newport cigarettes. *See, e.g., Lorillard Tobacco Co. v. Mashni Corp.*, No. 03-5104 (N.D. Ill. filed July 23, 2003); *Lorillard Tobacco Co. v. Jab Petroleum Inc.*, No. 03-5616 (N.D. Ill. filed Aug. 12, 2003).

evidence connecting the defendants to a known source of counterfeit cigarettes. In particular, despite contrary circumstantial evidence, they denied purchasing cigarettes from a known counterfeit source. Yet they provided no plausible innocent source for the counterfeits. All this, coupled with the "less than forthcoming" conduct at the discovery stage, further suggests knowledge or willful blindness to the counterfeit nature of the cigarettes. The only reasonable inference is that the defendants knew of, or were willfully blind to, the sale of counterfeit cigarettes at the station.

When reviewing an appeal from summary judgment, we recognize that, in determining whether a defendant acted with willful blindness to counterfeit products, "[a]s a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (citing *Morissette v. United States*, 342 U.S. 246, 274 (1952); *United States v. Gregory*, 730 F.2d 692, 702 (11th Cir. 1984)). However, "we are not constrained to accept denials supported by a mere scintilla of evidence. Such bare denials—for example, where the defendant's alleged ignorance amounts to willful blindness, or where the owner's claims of ignorance are 'inconsistent with the uncontested facts'—are insufficient to create a genuine triable issue." *United States v. 16328 S. 43rd E. Ave., Bixby, Tulsa County, Okla.*, 275 F.3d 1281, 1285 (10th Cir. 2002) (affirming grant of summary judgment to United States in a forfeiture case based on legal conclusion that facts showed the defendant knew of and consented to criminal activities on property)*; United States v. One Parcel of Prop., Located at 755 Forest Rd.*, 985 F.2d 70, 72-73 (2d Cir. 1993) (affirming

grant of summary judgment to United States in a forfeiture case based on evidence establishing owner's willful blindness to drug activity on property).

Similarly, in this case defendants must do more than baldly deny the reasonable inferences and facts presented by Lorillard to avoid the conclusion that they knowingly sold counterfeit cigarettes. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (explaining that an opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)). Yet we reiterate that defendants offer no plausible explanation for the presence of the counterfeit cigarettes, the failure to notice the tax stamps when checked, implausible denials of knowledge of known counterfeit trafficker Umar and U.S.A. Cigarettes, and questionable discovery practices. Even when asked at oral argument what new evidence could be presented at a hearing regarding the defendants' mental state, counsel failed to cite with specificity any new evidence beyond denials of their knowledge. As we have noted in the summary judgment context, "neither presenting a scintilla of evidence, . . . nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment. . . . The party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Van Diest Supply Co. v. Shelby*

*County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (internal quotation and citation omitted). The defendants have failed to do so. Accordingly, the district court did not err as a matter of law in determining that defendants knowingly sold counterfeit cigarettes and, therefore, the mandatory award for attorneys' fees under 15 U.S.C. § 1117(b) applied.[3]

Finally, we note that the statute awards reasonable attorneys' fees "unless the court finds extenuating circumstances." 15 U.S.C. § 1117(b). The district court did not make any finding regarding extenuating circumstances in its one-sentence order determining entitlement to attorneys' fees. Regardless, A&E has not argued that extenuating circumstances exist precluding an award of fees before this court or before the district court, instead focusing on the alleged lack of willfulness. Accordingly, A&E forfeited any argument based on possible "extenuating

---

[3] Before the district court, Lorillard has requested attorneys' fees amounting to $136,349.76. As noted previously, only the final decision of the district court determining the entitlement to attorneys' fees under the statute is before this court. The district court has not yet ruled on the amount of the award, and the parties do not contest the amount of the fees before this court at this time. In fact, the defendants did not even file a response brief to Lorillard's motion for attorneys' fees before the district court and it is not clear whether the parties dispute the amount. Although the sum requested is substantially more than the $50,000 award of statutory damages for liability that defendants did not appeal, the entitlement to attorneys' fees in cases of willful blindness to counterfeiting is part of the statutory scheme. The fact that the amount may be greater than the award for liability does not factor into our analysis at this stage.

circumstances." *See Lee*, 875 F.2d at 590 ("We needn't worry about the defense of extenuating circumstances . . . under section 1117(b), because as an affirmative defense it must be pleaded or otherwise presented to the district court. It was not, and is therefore waived.").

### III.

Because we find no genuine issue of material fact regarding the appellants' knowledge or willful blindness to the presence of counterfeit cigarettes, the mandatory statutory language of 15 U.S.C. § 1117(b) applied. Accordingly, the statute required the district court to award reasonable attorneys' fees, absent a showing of extenuating circumstances. Since appellants presented no extenuating circumstances, we AFFIRM the district court's decision that Lorillard is entitled to attorneys' fees.

A true Copy:

      Teste:

                _____
                *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*