UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued June 13, 2006
Decided June 29, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

No. 05-1925

JAMES OAKLEY,
 *Plaintiff-Appellant,*

 *v.*

ROGER D. COWAN, STANLEY
BUCHEIT and GARY KNOP,
 *Defendants-Appellees.*

Appeal from the United States District
Court for the Southern District of Illinois.

No. 03 C 225

G. Patrick Murphy,
*Chief Judge.*

**O R D E R**

James Oakley was fired from his job with the Illinois Department of
Corrections ("IDOC" or "Department") for violating the Department's sexual
harassment policy and standards of conduct. He brought this action against the
warden and two of his other superiors under 42 U.S.C. § 1983, claiming that they
had denied him equal protection by firing him, but not female officers, who had
engaged in like conduct. The district court granted summary judgment for the
defendants. We affirm the judgment.

## I

Because this is an appeal from summary judgment, we must view the facts in the light most favorable to Mr. Oakley, the non-moving party. *Scaife v. Cook County*, 446 F.3d 735, 738-39 (7th Cir. 2006). Mr. Oakley began working for IDOC in 1985. At the time of his discharge in April 2001, he held the rank of lieutenant at Menard Correctional Center. In that position he supervised sergeants, correctional officers and inmates. Mr. Oakley, in turn, was supervised by defendant Stanley Bucheit, a major and the chief of security at Menard. Bucheit reported to defendant Gary Knop, the assistant warden in charge of overall operations. Knop in turn reported to defendant Roger Cowan, the warden at Menard. Warden Cowan reported to the Deputy Director or Director of the IDOC.

In early 2001, correctional officer Rachel Nutter notified Captain Anthony Ramos that Mr. Oakley had grabbed, or attempted to touch, her breasts and buttocks. Ramos directed Nutter to complete a written complaint and then informed Knop of the allegation. Ramos normally would have informed his supervisor, Major Bucheit, but Bucheit was unavailable. Ramos therefore reported the incident directly to Assistant Warden Knop.

Knop followed established departmental procedure and reported the allegations to Warden Cowan. Bucheit was present in Warden Cowan's office at the time. Warden Cowan then notified the Deputy Director, per IDOC policy, and referred the matter to the Office of Affirmative Action. After Warden Cowan and the Deputy Director received the results of an internal investigation, Warden Cowan arranged for a hearing before an employee review board. Due to the nature of the allegations and Mr. Oakley's position as a member of the supervisory staff, an officer from another IDOC facility was brought in to hold the hearing.

Based on the testimony of ten female staff members who either had witnessed or had been victims of Mr. Oakley's sexual harassment, the hearing officer recommended that he be suspended pending discharge for violation of the directives regarding sexual harassment and standards of conduct. Warden Cowan concurred, and the Director approved the suspension pending discharge. The Department of Central Management Services approved the discharge on April 27, 2001.

In his complaint, Mr. Oakley claimed that Warden Cowan, Knop and Bucheit violated his right to equal protection because the defendants knew of female correctional officers who had engaged in sexual harassment, but they had did not disciplined them. He contends that this lack of discipline demonstrates the defendants' intentional discrimination against him because he is male. In granting summary judgment for the defendants, however, the district court determined that

Mr. Oakley presented no evidence that Bucheit and Knop were involved personally in the discharge decision. Warden Cowan was involved in the decision, but the court concluded that Mr. Oakley had presented no evidence that Warden Cowan was motivated by a desire to discriminate. Mr. Oakley has abandoned his claim against Warden Cowan on appeal.

## II

Mr. Oakley's sole argument on appeal is that the evidence establishes personal involvement by Bucheit and Knop. In Mr. Oakley's view, these defendants acquiesced in the chain of events that led to his termination, but failed to act when female employees engaged in equally serious transgressions. Bucheit and Knop respond, as they did in the district court, that (1) they cannot be liable under § 1983 because they were not personally involved in the decision to fire Mr. Oakley, and (2) Mr. Oakley neither established a prima facie case of discrimination, nor rebutted the nondiscriminatory reason for terminating his employment. Mr. Oakley does not respond to the latter argument. We review a grant of summary judgment de novo, *Scaife*, 446 F.3d at 738, and may affirm on any ground supported by the record, *Cygan v. Wisconsin Dep't of Corr.*, 388 F.3d 1092, 1098 (7th Cir. 2004).

The premise of Mr. Oakley's argument suffers from a fatal flaw. In his complaint Mr. Oakley alleged that both Bucheit and Knop violated his right to equal protection by terminating him even though they were aware of "far more significant" acts of sexual harassment by female employees and did not terminate them. Compl. ¶ 10. However, Mr. Oakley presented no admissible evidence that any female employees actually had engaged in sexual harassment or, if they had, that their behavior was reported up the chain of command. In responding to Bucheit and Knop's motion for summary judgment, Mr. Oakley did assert that five female correctional officers violated the sexual harassment policy but were never disciplined. According to Mr. Oakley, Officer Wendy Holton sold sex toys at work from a catalog, ate popsicles in a "sexually suggestive manner" and left "inappropriate" messages when she paged other employees. Plaintiff's Memorandum of Law in Opp'n to Summary Judgment at 13. In addition, Mr. Oakley continued, the other four women, including Rachel Nutter, his principal accuser, made sexually suggestive comments and possessed pornography and other material of a sexual nature while at Menard. However, Mr. Oakley's only supporting evidence was his own deposition testimony, and, except as to Holton, his knowledge was admittedly limited to second-hand accounts and unsubstantiated rumors. He did assert first-hand knowledge of Holton's sales of sex toys because he had purchased merchandise from her, but that merchandise had been delivered to him off-site. He witnessed Holton bring merchandise into Menard on one occasion but never reported this activity as misconduct. Therefore, even if Holton's side business could be seen as

violating IDOC's sexual harassment policy, Mr. Oakley hardly could complain about uneven enforcement. Mr. Oakley presented no evidence that a written complaint was ever filed against any of the female officers he named. Moreover, both Bucheit and Knop testified in their depositions that they never received a written sexual harassment complaint concerning anyone but Mr. Oakley.

Having no admissible evidence to support his premise--that female harassers were ignored while he was fired--Mr. Oakley's equal protection claim is wholly meritless with respect to all defendants. With respect to Bucheit and Knop, however, his claim suffers an additional problem. Neither defendant was involved personally in the decision to fire him. To survive summary judgment, a plaintiff claiming a violation of § 1983 must produce evidence that the defendant knew of a deprivation and "'approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated.'" *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (quoting *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996)). Absent direct participation, there must at least be a showing that the defendants "acquiesced in some demonstrable way" in the alleged violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

Mr. Oakley contends that Bucheit and Knop were present at the meeting where Warden Cowan decided to inform the Deputy Director of the allegations and that, therefore, they "acquiesced in the chain of events that led to Oakley's termination." Appellant's Br. at 8. However, Knop was following established department policy when he passed the allegations along to Warden Cowan, and Bucheit just happened to be in the room at the time. *Cf. Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988) (holding that defendant who "sets in motion" series of events that he knew or should have known would cause others to deprive plaintiff of rights may be liable under § 1983). Warden Cowan explained that department policy required him to report allegations of this nature to his superiors and that he always initiates an investigation when he receives a report of sexual harassment. Furthermore, even if Warden Cowan's action had been discretionary, Bucheit and Knop were not "involved" in that action by virtue of their presence. *See Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1040 (7th Cir. 2003) (holding that evidence of defendant's attendance and active participation in meeting where § 1983 violation allegedly occurred did not create triable issue of fact as to personal involvement). After the meeting at which Knop had informed Warden Cowan of the allegations against Mr. Oakley, Bucheit and Knop had no other involvement in the termination decision.

In any event, Mr. Oakley failed to make out a prima facie case of discrimination. Mr. Oakley's equal protection claim is analyzed under the same standards as a Title VII claim. *See Hildebrandt*, 347 F.3d at 1036; *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003). He relied on the indirect method of

proof, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and, under that method, the plaintiff typically must establish a prima facie case of discrimination by producing evidence that he (1) is a member of a protected class, (2) was meeting his employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated individuals outside his class, *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). This formulation is even more difficult to satisfy in a case involving a member of a non-protected class because, instead of the first prong, the plaintiff must identify background circumstances--something "fishy"--demonstrating that the defendant was motivated to discriminate against employees in his class. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006); *Gore*, 416 F.3d at 592; *Ballance*, 424 F.3d at 617; *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003). Mr. Oakley could not establish these background circumstances. Moreover, as we have discussed earlier, his claim is doomed by his lack of evidence that any accused harasser outside his class received more favorable treatment.

AFFIRMED