NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 17, 2007*
Decided January 26, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 06-1337

| | |
|---|---|
| JOSEPH CASTILLO, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division |
| *v.* | No. 2:04-CV-086-LJM-WTL |
| VICTOR MANZO and DAVID BREWER, *Defendants-Appellees.* | Larry J. McKinney, *Chief Judge.* |

**O R D E R**

Joseph Castillo, an inmate at the Indiana Department of Correction, claims in this action under 42 U.S.C. § 1983 that he was fired from his prison job because he is Hispanic. The district court granted summary judgment for the two prison employees who are parties to this appeal, both of whom supervised Castillo in his job. We reverse and remand.

Castillo is housed at the Wabash Valley Correctional Center, where PEN Products, a division of the prison system, operates a shop that produces harnesses

---

\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. Fed. R. App. P. 34(a)(2).

for electrical wiring. PEN Products joined with Hazelton Industries, Inc., to market those harnesses. Castillo was hired into the shop in February 2002 and was evaluated as "average" and "above-average" before achieving an "excellent" rating on June 20, 2002. Just days after he received that positive review, however, Castillo was suspended by a different supervisor, Victor Manzo, the newly appointed Shop Foreman. Manzo then gave Castillo a highly critical written evaluation and fired him, along with four black workers and one white worker. Manzo, who was acting on instructions conveyed to him through another supervisor from David Brewer, the Plant Manager, told the discharged inmates they had "messed up a job" for Hazelton by producing defective harnesses. The white inmate later was rehired.

Castillo filed suit claiming, as relevant here, that Brewer and Manzo fired him because he is Hispanic, in violation of his right to equal protection. Both sides moved for summary judgment. In support of their joint motion, Brewer and Manzo each submitted a short declaration but offered no other evidence. Brewer avers that a representative from Hazelton telephoned complaining about defective wiring harnesses and demanding that the inmates who made them be terminated from the shop. Brewer says he reviewed information received from Hazelton about the faulty product and then instructed Mark Wehrmeyer, the Foreman Supervisor, to fire Castillo and the other inmates. Manzo, in his declaration, recounts that Wehrmeyer told him in a telephone conversation to write up a negative evaluation for Castillo and fire him, which Manzo did. Castillo was terminated on July 12, 2002.

Castillo, for his part, submitted his own declaration along with affidavits from two of the other inmates who were fired. He also introduced a written report that Hazelton prepared and gave to Brewer after completing its own investigation into the defective harnesses, a memorandum written by Brewer explaining to a prison administrator why he fired Castillo and the others, and the administrator's report showing the race, employment dates, reasons for termination, and rehire statistics for all inmates who left the wiring-harness shop between January 2001 and August 2003. Castillo also reviewed the documents obtained from the defendants during discovery and offered his own summaries, including one of the data in the administrator's report and another that compares the rates of unproductive "lost time" for Caucasian inmates who kept their jobs versus inmates who were fired.

Hazelton's investigative report, which is dated June 28, 2002, identifies the shipments containing defective harnesses and matches them to the employees thought to be responsible for the faulty product. Hazelton used the employee numbers assigned by Pen Products, rather than inmate names, to identify the workers who produced the faulty harnesses, but Castillo's employee number is not on the report. Nor is Castillo's name or employee number on any of the Job Tracking Sheets kept by the wiring harness shop for the questionable shipments.

Those internal documents connect the defective harnesses, not to Castillo or the other five inmates who were terminated, but to nine other inmates—seven white and two black—who were never disciplined.

In response to Castillo's submissions at summary judgment, the defendants protested that Brewer's memorandum was not relevant since it relates primarily to another of the inmates fired with Castillo. The defendants also argued that the investigative report from Hazelton and the summaries Castillo prepared of the prison administrator's report and the "lost time" data were hearsay. The district court perhaps agreed with the defendants, since the court seems to have disregarded virtually all of Castillo's evidence, but we see no basis for excluding his exhibits. Brewer's memorandum gives his account of the events leading to Castillo's termination, including the defendant's representation that he relied on Hazelton's report, which does not implicate Castillo. *See* Fed. R. Evid. 801(d)(2). The two summaries are admissible compilations of data that Castillo obtained from the defendants, *see* Fed. R. Evid. 1006; *United States v. Alwan*, 279 F.3d 431, 440 (7th Cir. 2002). And while defendants are correct that Castillo did not lay a foundation for admitting Hazelton's report as a business record of that company, *see* Fed. R. Evid. 803(6), 902(11), there was no need for him to do so. Castillo did not rely on the Hazelton document as proof that he was not responsible for the faulty harnesses; rather, he offered it for the nonhearsay purpose of establishing that Brewer could not have believed from looking at the report that he was responsible because the report does not implicate him. *See* Fed. R. Evid. 801(c). The defendants, moreover, never countered Castillo's statement of undisputed facts by pointing to contradictory evidence, so they effectively admitted the facts he recited, including that his employee number is not included in the Hazelton report or in the relevant Job Tracking Sheets. *See generally* S.D. Ind. L. R. 56.1. The district court nonetheless concluded that Castillo had not established a prima facie case of discrimination. The court speculated that Castillo likely was "misidentified in the Hazelton-generated firing scenario" but concluded that there was "not the slightest shred of evidence" suggesting that race was a motivating factor. The latter conclusion misapplies the summary judgment standard.

Brewer and Manzo have never disputed that they are state actors, so the law governing claims under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e *et seq.*, also controls the analysis of Castillo's equal-protection claim, *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750 & 751 n.2 (7th Cir. 2006); *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1037-38 (7th Cir. 2003). Castillo lacked direct evidence of discrimination and proceeded under the indirect method, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), so to establish a prima facie case of discrimination he needed to produce evidence that he (1) is a member of a protected class, (2) was meeting the shop's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was treated less

favorably than similarly situated workers outside his class, *see, e.g., Burks*, 464 F.3d at 750-51; *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005); *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003).

The defendants concede the first and third elements, and though they dispute the second, we cannot accept their argument that Castillo, who was rated as "excellent" immediately before his suspension and termination, was not performing up to the shop's legitimate expectations. *See Goodwin v. Bd. of Tr. of Univ. of Illinois*, 442 F.3d 611, 619 (7th Cir. 2006); *Hildebrandt*, 347 F.3d at 1030-31. Castillo was suspended before he received his one negative evaluation, and plainly that document was created after the fact to memorialize the prior decision to fire him. The significant point is that the one performance issue cited by the defendants concerns the faulty wiring harnesses, but, as far as the undisputed evidence shows, Castillo had no role in making them.

The defendants also dispute Castillo's contention that he presented enough evidence to go forward on the fourth element of his prima facie case, but again we agree with Castillo's position. To show that similarly situated employees were treated more favorably, a plaintiff may produce evidence that workers outside his protected class were not fired despite engaging in the same conduct for which he was fired. *See Curry v. Menard, Inc.*, 270 F.3d 473, 478-80 (7th Cir. 2001). Castillo was terminated because of his alleged involvement in producing the defective wiring harnesses, but at summary judgment the defendants did not dispute his evidence that he played no role in the production of those harnesses or that the nine inmate workers who did make them were not disciplined at all. Seven of those inmates are white. And the only white inmate fired with Castillo was rehired.

We note that the district court accepted the defendants' contentions that the prison administrator's report submitted by Castillo undermines his argument that similarly situated employees outside his protected class were treated more favorably. The report, which covers a 32-month period, does show that similar numbers of Caucasian and non-Caucasian workers left jobs at the wiring-harness shop (ten and thirteen, respectively), and that similar numbers from each group were rehired (two and four, respectively). Unlike the district court, however, we are not persuaded that the administrator's report evidences equal treatment between inmates in the two groups. As Castillo recognized, only two of the ten Caucasian workers who left the shop were fired for poor performance, and one of those two was rehired. Seven of the thirteen non-Caucasian workers who left the shop were fired for poor performance, and the only rehire occurred after the inmate filed suit against these defendants. The administrator's report, moreover, does not identify who made each termination or rehire decision, and if Brewer and Manzo did not, we fail to see how the report sheds any light on what happened to Castillo. The report, then, is not favorable to the defendants, and in fact could be read to suggest that

non-Caucasian inmates have a much greater chance of being fired and little chance of being rehired if they are fired.

We conclude, then, that Castillo established a prima facie case of discrimination. That shifted the burden to the defendants to articulate a nondiscriminatory reason for terminating Castillo, *see Goodwin*, 442 F.3d at 617-18; *Ballance*, 424, F.3d at 617, but they made no attempt to do so. It may well be true, as the district court speculated, that Brewer simply erred in associating Castillo with the defective harnesses. Indeed, the defendants themselves, through counsel, suggested that Castillo's evidence showed it was "possible" they "did not conduct a thorough investigation prior to determining the individuals who were responsible for the defective wiring harnesses." An adverse employment decision that is traceable to an honest mistake, or even to a patently inadequate investigation, would not be actionable under § 1983. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 693 (7th Cir. 2006); *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006); *Balderston v. Fairbanks Morse Engine*, 328 F.3d 309, 323 (7th Cir. 2003). But motivation is a question of fact that turns on *evidence*, *see Slusher v. N.L.R.B.*, 432 F.3d 715, 726 (7th Cir. 2005); *SCA Tissue N. Am. LLC v. N.L.R.B.*, 371 F.3d 983, 988-89 (7th Cir. 2004), and at summary judgment the defendants maintained in their declarations, not that they actually made a mistake, but that Castillo indeed shared responsibility for the defective product. That position is not consistent with the evidence, and since the defendants offered no other explanation to counter the inference of discrimination arising from Castillo's prima facie case, they were not entitled to prevail at summary judgment.

Accordingly, the judgment is REVERSED, and the case is REMANDED for further proceedings.